UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RUSSELL B., | ) |
| | ) |
|        Plaintiff | ) |
| | ) |
| v. | )   No. 1:22-cv-00223-GZS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|        Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred by discounting favorable opinion evidence based on faulty reasons, leaving his residual functional capacity (RFC) assessment unsupported by substantial evidence. *See* Plaintiff's Brief (ECF No. 13). I agree and recommend that the Court vacate the Commissioner's decision and remand this matter for further proceedings consistent with this decision.

**I. Background**

The Plaintiff applied for benefits in January 2019, alleging disability beginning on September 21, 2016. *See* Record at 24. After his claim was denied at the initial and reconsideration levels, the Plaintiff requested a hearing before an ALJ. *See id.* That hearing took place in January 2021, *see id.* at 24, 46-73, following which the ALJ issued a decision finding that, from his alleged onset date to his date last insured (December 31, 2019), the Plaintiff had the severe impairments of a left knee

impairment, status-post left finger amputation, degenerative disc disease, bilateral shoulder AC joint osteoarthritis, major depression disorder, anxiety disorder, and attention deficit hyperactivity disorder, *see id.* at 26.  The ALJ went on to find that, during the relevant period, the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with several additional limitations, including that he could only occasionally push and pull with his upper extremities; occasionally climb stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; should avoid overhead reaching bilaterally; and could frequently finger with his left hand. *See id.* at 29.  The ALJ ultimately concluded that the Plaintiff could not have returned to his past relevant work with such an RFC but could have performed other work existing in significant numbers in the national economy and therefore had not been disabled through his date last insured.  *See id.* at 36-38.  The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a

different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The Plaintiff argues, among other things, that the ALJ erred in discounting the evaluations of his treating orthopedic specialist Thomas Murray, M.D., that he could not engage in repetitive activities with his shoulders. *See* Plaintiff's Brief at 7, 12.

The ALJ found "little persuasive value" in Dr. Murray's evaluations, noting that Dr. Murray assessed only the Plaintiff's shoulders and that his evaluations were not well explained because he checked boxes on prefilled forms, did not cite "objective imaging studies" or "clinical findings on physical examinations," and failed to put his evaluations in "vocational[ly] appropriate terms." Record at 35.

The Plaintiff points out, *see* Plaintiff's Brief at 7-8, that Dr. Murray did cite physical examinations and imaging studies in support of his evaluations that the Plaintiff could not engage in repetitive activities with his shoulders, *see* Record at 658 (citing an exam and listing a diagnosis of bilateral shoulder pain); *id.* at 660 (citing an exam and noting that the Plaintiff had been referred for an MRI to investigate whether he had re-torn his left rotator cuff); *id.* at 662 (citing an exam and an MRI and noting that the Plaintiff suffered from "bilateral rotator cuff tear"). The Plaintiff also points out, *see* Plaintiff's Brief at 8, that Dr. Murray's form evaluations were

3

accompanied by contemporaneous treatment notes from early 2018 describing pain and tenderness in the Plaintiff's shoulders on physical examination and recording Dr. Murray's impression—based on x-rays and MRIs—that the Plaintiff had re-torn both of his rotator cuffs after prior surgical repairs, *see* Record at 656-62. Finally, the Plaintiff highlights that the vocational expert testified that a person who could not engage in repetitive work with his upper extremities could not perform the jobs relied upon by the ALJ at Step 5. *See* Plaintiff's Brief at 12.

The Commissioner responds that the ALJ appropriately discounted Dr. Murray's evaluations because Dr. Murray failed to explain the connection between his findings and the limitations he assessed. *See* Commissioner's Brief (ECF No. 16) at 10. She asserts that "[s]upportability is about more than the existence of evidence in the record, it is about the 'supporting explanations presented by a medical source.'" *See id.* (emphasis omitted) (quoting 20 C.F.R. § 404.1520c(c)(1)). She further argues that the ALJ was "not required to afford persuasive value to a pre-printed form that provides no justification, no analysis, and no indication of the most a claimant can do in spite of his impairments and limitations." *Id.* at 11.

Although I agree that Dr. Murray's evaluations were not exactly the height of clarity, the Commissioner's attempt to pass them off as totally unexplained form opinions falls flat. Dr. Murray was the Plaintiff's treating orthopedic specialist; he examined the Plaintiff, reviewed x-rays and MRIs of the Plaintiff's shoulders, and ultimately determined that the Plaintiff suffered from bilateral rotator cuff tears. *See*

4

Record at 656-62. Contemporaneously with his treatment of the Plaintiff, Dr. Murray filled out workers compensation evaluation forms on which he cited his examinations and some of the imaging studies. *See id.* at 658, 660, 662. Most significantly, on his final evaluation, Dr. Murray cited an exam and MRI, noted that the Plaintiff suffered from bilateral rotator cuff tears, and reiterated his opinion that the Plaintiff could never perform repetitive activities with his shoulders—the connection between the assessed impairment and the opined limitation is fairly obvious. *See id.* at 662. These things contradict the ALJ's findings that Dr. Murray failed to explain his opinion or cite imaging studies and objective findings based on examination, *see id.* at 35, which, in turn, indicates that the ALJ improperly ignored this supporting explanation and evidence when discounting Dr. Murray's opinion, *see Nguyen*, 172 F.3d at 35.

Additionally, the ALJ's finding that Dr. Murray's evaluations were not expressed in "vocationally appropriate terms," Record at 35, is undermined by the vocational expert's testimony. When asked by the Plaintiff's counsel about a person who could not engage in repetitive activities with his upper extremities, the vocational expert was able to quantify the vocational implications of such a limitation—namely, that the limitation would eliminate the jobs relied upon by the ALJ at Step 5.[1] *See id.* at 37, 72.

---

[1] I recognize that the phrase upper extremity encompasses more than just a person's shoulder, which means that the Plaintiff's counsel asked about a broader limitation than the one opined by Dr. Murray. Nevertheless, the vocational expert's testimony underscores the potential vocational significance of a limitation that precludes repetitive arm activities and suggests that Dr. Murray's opinion on this point was set forth in such a way that it could be understood by a vocational expert.

That the ALJ offered additional reasons for discounting Dr. Murray's evaluations—including that the evaluations did not describe the most that the Plaintiff could do and that Dr. Murray left some boxes on the forms unchecked—does not render his errors harmless because it cannot be said with any degree of certainty that his weighing of Dr. Murray's opinion would have been the same had he not ignored Dr. Murray's supporting explanation and evidence, which were significant to the supportability and consistency of Dr. Murray's opinion.  In other words, but for his errors, the ALJ might have given greater weight to Dr. Murray's opinion and assessed a more limiting RFC; thus, remanding for the ALJ to address these errors would not be an empty exercise.  *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000); *cf. Sutton v. Berryhill*, 358 F. Supp. 3d 162, 170 (D. Mass. 2019) (remanding where, but for an error in discounting a medical provider's opinion, the ALJ "could well have reached a different conclusion regarding the" claimant's RFC).

## IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the matter **REMANDED** for further proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: October 17, 2023

<u>/s/ Karen Frink Wolf</u>
United States Magistrate Judge